STATE EX REL. BROWN, Appellant, vs. APPLEBY, Respondent.

*April 1—April 20, 1909.*

*Municipal corporations: Police officers: Appointment: "Chief of police:" "City marshal:" "Captain of police."*

1. The marshal of a city occupies a position on its police force, and in cities of the second and third class cannot be legally elected or appointed to the office without the concurrence of the board of police and fire commissioners appointed under the requirements of sec. 959—40, Stats. (1898).

2. Under the statutes and city charters of Wisconsin the powers and duties conferred on the "city marshal," "chief of police," and "captain of police" are practically the same, and those terms are synonymous, each city being authorized to denominate a single officer any one of the three distinct names.

3. The term "chief of police" is used in sec. 959—41, Stats. (Laws of 1907, ch. 61), in the sense of chief officer of police, or active head of the police department, and is not limited to an officer technically designated "chief of police."

4. Sec. 959—40 *et seq.*, Stats. (Laws of 1907, ch. 61), confers upon the board of police and fire commissioners the power to appoint a chief of police and takes away from the common council power under the city charter to appoint.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge.   *Affirmed.*

This action was brought to oust the defendant from the office of city marshal of the city of Janesville, and resulted in a judgment in defendant's favor.

The city of Janesville was incorporated under ch. 221, Laws of 1882.   Sec. 2 of ch. II of that act provided that

one of the officers of said city should be a city marshal.
Sec. 18 of ch. III conferred on such marshal all the powers
conferred on constables under the general laws of the state,
and in addition thereto it was made his duty to cause all
laws, ordinances, orders, and resolutions of the city to be
kept, and to perform such other duties as the common coun-
cil should from time to time prescribe.  Sec. 46 of ch. XII
of the charter provided that no general law of the state con-
travening the provisions of the charter should be construed
as repealing or amending the same unless such purpose was
expressly set forth in the law.  By ch. 61, Laws of 1907
(sec. 959—40, Stats.), it was provided that in all cities of
the second and third class, however incorporated, there
should be a board of fire and police commissioners.  The
city of Janesville is a city of the third class as defined in
the general charter law.  It was further provided by said
act of 1907 (sec. 959—41, Stats.) that the chief of police
should be appointed by the board of police and fire commis-
sioners, and that no person should be appointed to any posi-
tion on the police force without the approval of said board.

Prior to March 30, 1908, W. H. Appleby had been elected
to the office of marshal and had been performing the duties
of that office.  On that day he tendered his resignation to
the secretary of the board of police and fire commissioners,
to take effect the following day, which resignation was in
form accepted, whereupon said board on April 1, 1908,
elected the defendant to the office of chief of police of said
city.  He thereupon qualified and entered upon his duties
as police officer, and took possession of the office of city mar-
shal, which had become vacant, and he has since continued
to hold the same.  On April 20, 1908, the city council
elected the relator to the office of marshal and he thereupon
qualified.  Prior to his election and since he has been a
member of the police force of the city of Janesville, but he
has never been permitted to exercise the functions or draw

the salary of marshal. The circuit court held that the election of the relator to the office of marshal was illegal, and that the election of the defendant to the office of chief of police or marshal was legal, and from a judgment dismissing the complaint of the relator he brings this appeal.

*John Cunningham,* attorney, and *F. C. Burpee,* of counsel, for the appellant.

*William G. Wheeler,* for the respondent.

BARNES, J. Sec. 18 of ch. III of the special charter of the city of Janesville (ch. 221, Laws of 1882) confers on the city marshal all the powers of a constable under the laws of this state. It also provides that

"it shall be his special duty to cause all laws, ordinances, orders, resolutions and by-laws in force in this city to be kept, observed and performed, and to do and perform such acts and duties as said council shall from time to time direct and prescribe."

It is apparent from the law quoted that the city marshal is essentially a police officer, being required to perform the duties and functions invariably required of such officers. The fact that he is incidentally clothed with the powers of a constable does not negative the fact that he is a policeman. It is made his special duty by the charter to enforce the ordinances, orders, and resolutions of the city council, and to perform such other duties as the council may direct. To say that an officer clothed with such powers is not a member of the police force of the city would be contrary to our notion of what the functions of a police officer really are.

Sec. 959—40, Stats. (Laws of 1907, ch. 61), provides for the appointment of a board of police and fire commissioners in all cities of the second and third class however incorporated, and sec. 959—41 vests in such board the power to appoint a chief of police. The city of Janesville is a city of the third class, so the act applies thereto.

198 . SUPREME COURT OF WISCONSIN. [Apr.

State ex rel. Brown v. Appleby, 139 Wis. 195.

Sec. 959—41 further provides that "no person shall be appointed to *any position* either on the police force or in the fire department in any such city except with the approval of such board." If it be conceded that the common council, rather than the board of police and fire commissioners, might still select the marshal, the selection would not become effective until approved by such board. We think it is clear that the marshal of the city occupies a position on its police force, and, if he does, he could not be legally elected or appointed to the office without the concurrence of the aforesaid board. The appellant, therefore, fails to shown that he was duly elected or appointed to the office of city marshal.

There remains to be considered the question whether so much of sec. 959—41 as confers upon the board of police and fire commissioners the power to appoint a chief of police took away from the common council the power to appoint a city marshal. In a number of cities of the second and third class operating under special charters, the chief officer of police is designated "city marshal." In a number of other such cities such officer is designated "chief of police." Whichever designation is adopted, the powers conferred are practically the same. In but one city do both offices seem to exist. The general charter law (sec. 925—259, Stats. 1898) provides:

"The city marshal shall be known as such or as captain or chief of police, in the discretion of the council, and shall have command of the police force of the city under the direction of the mayor."

This language indicates that the legislative thought was that the terms "marshal," "chief of police," and "captain of police" were synonymous, and each city might exercise its taste in christening a single officer any one of three distinct names, the powers and duties of the officer exercising the functions of the office being the same no matter how designated. Secs. 959—40 *et seq.* were intended to place the appointment of firemen and policemen under civil service rules,

and no reason is apparent why such rules should be applied to the appointment of a chief of police and not to the appointment of a city marshal; and it is entirely reasonable to suppose that the legislature used the term "chief of police" in sec. 959—41, Stats. (Laws of 1907, ch. 61), in the sense of chief officer of police, or active head of the police department, rather than in a more restrictive sense, by which it might be limited to an officer technically designated "chief of police." We think the language of the statute may be so construed without doing violence to the letter thereof, and that such construction effectuates the manifest purpose the legislature had in view in enacting the law.

*By the Court.*—Judgment affirmed.